PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

QUENTIN MCLEAN,

　　　　　*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA; UNITED
STATES CONGRESS,

　　　　　*Defendants-Appellees.*

No. 06-7784

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(2:06-cv-00447-RGD)

Argued: September 23, 2008

Decided: May 21, 2009

Before MICHAEL, GREGORY, and SHEDD,
Circuit Judges.

---

Affirmed by published opinion. Judge Michael wrote the
opinion, in which Judge Gregory joined. Judge Shedd wrote
a separate opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** Charlotte Garden, Student Counsel, GEORGE-
TOWN UNIVERSITY LAW CENTER, Appellate Litigation

Program, Washington, D.C., for Appellant. Joel Eric Wilson, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellees. **ON BRIEF:** Steven H. Goldblatt, Director, Colin D. Forbes, Student Counsel, Benjamin D. Schuman, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellees.

---

## OPINION

MICHAEL, Circuit Judge:

The Prison Litigation Reform Act of 1996 (PLRA or Act), Pub. L. No. 104-134, 110 Stat. 1321-71 (1996), limits the ability of prisoners to file civil actions without prepayment of filing fees. When a prisoner has previously filed at least three actions or appeals that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, the Act's "three strikes" provision requires that the prisoner demonstrate imminent danger of serious physical injury in order to proceed without prepayment of fees. 28 U.S.C. § 1915(g). The main issue before us today is whether a dismissal without prejudice for failure to state a claim counts as a strike under § 1915(g). We hold that it does not. Four of the six previous actions filed by Quentin McLean, the plaintiff-appellant in this case, were dismissed without prejudice for failure to state a claim. As a result, McLean is not a three-striker, and he may proceed in this appeal without the prepayment of filing fees. His substantive claim must be rejected, however. McLean attempts to sue the United States and the United States Congress, asserting that a statute of limitations provision in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214 (1996), is retroactive and therefore unconstitutional. Because the United States and its Congress are

immune from such a suit, we affirm the district court's dismissal of McLean's complaint.

I.

The PLRA requires a district court to engage in a preliminary screening of any complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a) (2000). The court must identify "cognizable claims or dismiss the complaint, or any portion [thereof, that] is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1) (2000). The "three strikes" provision of the PLRA, § 1915(g), denies *in forma pauperis* (IFP) status to any prisoner who:

> has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (2000).

On August 3, 2006, McLean, a state prisoner in Virginia, filed a pro se action under 42 U.S.C. § 1983 against the United States and the United States Congress in the Eastern District of Virginia. He challenged as retroactive, and therefore unconstitutional, § 2244(d) of AEDPA, which imposes a statute of limitations on a state prisoner seeking to file a habeas corpus petition in federal court. *See* 28 U.S.C. § 2244(d). On the same day, McLean filed a motion for leave to proceed IFP. The district court proceeded directly to the preliminary screening of McLean's complaint as required by § 1915A(a) and dismissed it for failure to state a claim. *McLean v. United States*, No. 2:06-cv-00447 (E.D. Va. Sept.

12, 2006). The court concluded that McLean's motion to proceed IFP was moot in light of the dismissal under § 1915A.

After filing a notice of appeal, McLean filed a motion in this court to proceed IFP. Because of McLean's prisoner status our clerk's office treated his IFP motion as moot and required him to file a separate application—on our form—for leave to proceed without prepayment of fees in accordance with the PLRA.

The PLRA application form required McLean to state whether he had, while incarcerated, filed three actions or appeals that were dismissed as frivolous or malicious or for failure to state a claim. McLean responded in the affirmative and, as required, listed the names and docket information for five such actions. The PLRA application form then instructed McLean to state "facts in support of any claim" that he was "under imminent danger of serious physical injury." Appellant's Application for Leave to Proceed Without Prepayment of Filing Fees 1, No. 06-7784 (4th Cir. Nov. 16, 2006). McLean responded:

> My continue [sic] incarceration will subject me to psychological turmoil, worriation [sic], disturbances with thoughts – my deteriorating healthcare problems inadequately treated, exposures to unhealthy environment repeated government employees [sic] corruption and grown hate againts [sic] me, and loss of equality and rights of men Art. 1 sec. 1.

*Id.*

Once McLean's PLRA application was filed, the clerk entered an order conditionally granting him leave to proceed without full prepayment of fees. The order stated that it was "subject to rescission or revision at any time should the court determine that appellant has had three cases dismissed as frivolous, malicious, or for failure to state a claim and appellant

is not under imminent danger of serious physical injury." *McLean v. United States*, No. 06-7784 (4th Cir. Nov. 29, 2006) (order conditionally granting appellant's motion for leave to proceed without prepayment of filing fees).

A review of McLean's litigation history reveals that while incarcerated in Virginia, he had filed six non-habeas actions that were dismissed on grounds that might qualify them as strikes under § 1915(g). Specifically, all six actions were dismissed for failure to state a claim upon which relief can be granted. Four were dismissed without prejudice and the remaining two were simply dismissed, with one order noting that the dismissal counted as a strike for PLRA purposes.[1]

## II.

McLean's present appeal challenges the dismissal of his § 1983 action contesting the enactment of AEDPA's statute of

---

[1](1) *McLean v. Michael*, No. 7:98-cv-00119 (W.D. Va. Feb. 23, 1998) (dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); motion to reopen time to file appeal denied; *aff'd* 205 F.3d 1334 (4th Cir. 1999) (unpublished table opinion); (2) *McLean v. Flemming*, No. 7:98-cv-00731 (W.D. Va. Jan. 13, 1999) (dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (3) *McLean v. Bolling*, No. 7:99-cv-00221 (W.D. Va. May 10, 1999) (dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (4) *McLean v. Faust*, No. 2:99-cv-00625 (E.D. Va. June 2, 1999) (dismissed for failure to state a claim upon which relief can be granted; court noted that dismissal for failure to state a claim would be considered a strike under 28 U.S.C. § 1915(g)), *aff'd* 202 F.3d 259 (4th Cir. 1999) (unpublished table opinion); (5) *McLean v. Schillin*, No. 7:99-cv-00319 (W.D. Va. July 20, 1999) (dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (6) *McLean v. Bolling*, No. 7:99-cv-00341 (W.D. Va. July 26, 1999) (dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), *aff'd sub nom. McLean v. Angelone*, 202 F.3d 259 (4th Cir. 1999) (unpublished table opinion).

limitations. We reach the merits of his appeal only if he is eligible to proceed without prepayment of fees under § 1915 (the IFP statute). To resolve the eligibility issue, we must determine whether he has fewer than three prior dismissals that count as strikes or, if not, whether he is in imminent danger of serious physical injury. The determination of whether McLean is a three-striker under § 1915(g) turns on whether a dismissal without prejudice for failure to state a claim counts as a strike. We conclude for the following reasons that such a dismissal is not a strike.

A.

Section 1915(g) includes in its list of strikes an action or appeal "that was dismissed on the grounds that it . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). In interpreting this provision, we must first determine whether its language "has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. "Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Id.* at 340 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)).

Our task here is to determine whether Congress intended an action or appeal "that was dismissed on the grounds that it . . . fails to state a claim upon which relief may be granted" to count as a strike under 28 U.S.C. § 1915(g) if that dismissal was specifically designated to be "without prejudice." The language "fails to state a claim upon which relief may be granted" in § 1915(g) closely tracks the language of Federal Rule of Civil Procedure 12(b)(6). *Compare* Fed. R. Civ. P. 12(b)(6) (listing "failure to state a claim upon which relief can be granted" as grounds for dismissal). When Congress

directly incorporates language with an established legal meaning into a statute, we may infer that Congress intended the language to take on its established meaning. *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) ("It is firmly entrenched that Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute."); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").

When the word "dismissed" is coupled with the words "[for] fail[ure] to state a claim upon which relief may be granted," the complete phrase has a well-established legal meaning. Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."); *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004) ("[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice.").

It follows that the type of prior dismissal for failure to state a claim contemplated by § 1915(g) is one that constituted an adjudication on the merits and prejudiced the filing of a subsequent complaint with the same allegations. In contrast, a dismissal without prejudice for failure to state a claim is not an adjudication on the merits, *Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990), and "permits a plaintiff to refile the complaint as though it had never been filed," *Mendez v. Elliot*,

45 F.3d 75, 78 (4th Cir. 1995). Consequently, a dismissal *without prejudice* for failure to state a claim does not fall within the plain and unambiguous meaning of § 1915(g)'s unqualified phrase "dismissed . . . [for] fail[ure] to state a claim." As a result, a dismissal without prejudice for failure to state a claim does not count as a strike.

### B.

Although our conclusion as to the unambiguous meaning of an unqualified dismissal for failure to state a claim in the context of § 1915 is sufficient to end our inquiry, we address the government's and the dissent's assertions that the legislative purpose of the PLRA supports a contrary interpretation.

The impetus behind the enactment of the PLRA was a concern about the "endless flood of frivolous litigation" brought by inmates. 141 Cong. Rec. S14,418 (1995) (statement of Sen. Hatch). The Act's proponents expressed dismay because these frivolous suits were "draining precious judicial resources." 141 Cong. Rec. S7526 (1995) (statement of Sen. Kyl); *see also* 141 Cong. Rec. S14,418 (1995) (statement of Sen. Hatch) ("The crushing burden of these frivolous suits makes it difficult for courts to consider meritorious claims.").

The purpose of the PLRA was not, however, to impose indiscriminate restrictions on prisoners' access to the federal courts. Senator Kyl emphasized that the Act would "free up judicial resources for claims with merit by both prisoners and nonprisoners." 141 Cong. Rec. S7526 (1995) (statement of Sen. Kyl); *see also* 141 Cong. Rec. S14,627 (1995) (statement of Sen. Hatch) ("I do not want to prevent inmates from raising legitimate claims. This legislation will not prevent those claims from being raised."). As other courts have concluded, "[t]here is no doubt that the provisions of the PLRA . . . were meant to curb the *substantively meritless* prisoner claims that have swamped the federal courts." *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir. 2000) (emphasis in original).

Because a dismissal without prejudice for failure to state a claim is not an adjudication on the merits, treating such a dismissal as a strike would undermine Congress's intent. A potentially meritorious but inartfully pleaded claim by a prisoner that is dismissed without prejudice for failure to state a claim is wholly distinct from a claim that is dismissed as frivolous, malicious, or substantively meritless. The former claim might be revived by competent pleading, but the latter cannot. As the Second Circuit explained:

> Section 1915(g)'s mandate that prisoners may not qualify for IFP status if their suits have thrice been dismissed on the ground that they were 'frivolous, malicious, or fail[ed] to state a claim' was intended to apply to nonmeritorious suits dismissed with prejudice, not suits dismissed without prejudice for failure to comply with a procedural prerequisite.

*Snider v. Melindez*, 199 F.3d 108, 111 (2d Cir. 1999) (alteration in original). To treat as equivalent nonmeritorious suits dismissed with prejudice and those dismissed without prejudice for failure to state a claim by counting both as strikes would cut against the clearly expressed goal of Congress.

The dissent nevertheless contends that it is "evident" that the "legislative purpose underlying § 1915(g)" does not support our construction of the statute. *Post* at 28 n.8. The cases cited by the dissent, however, do not demonstrate that Congress intended § 1915(g)'s strike designation to reach potentially meritorious claims.

The dissent is of course correct in noting that, at the broadest level, "the PLRA's 'focus is to limit litigation brought by prisoners,'" *post* at 19 (quoting *Montcalm Pub. Corp. v. Virginia*, 199 F.3d 168, 171 (4th Cir. 1999)). A broadly conceived purpose does not imply, however, that Congress intended to use a meat-axe approach to achieve the purpose. The Supreme Court's opinion in *Jones v. Bock*, 549 U.S. 199

(2007), cited frequently by the dissent, fully supports our understanding of the goal of the PLRA. As the dissent itself explains, using the language of *Jones*, "[a]lthough our legal system 'remains committed to guaranteeing that prisoner claims . . . are fairly handled according to law,' the 'challenge lies in ensuring that the flood of *nonmeritorious* claims does not submerge and effectively preclude consideration of the allegations with merit.'" *Post* at 18 (quoting *Jones*, 549 U.S. at 203) (emphasis added). A dismissal without prejudice for failure to state a claim is not an adjudication on the merits of the claim. *Mann v. Haigh*, 120 F.3d at 36. Consequently, a suit dismissed without prejudice for failure to state a claim cannot properly be characterized as ultimately nonmeritorious; that determination has simply not been made.

### C.

The government also cites one circuit court opinion, *Day v. Maynard*, 200 F.3d 665 (10th Cir. 1999), which held that a dismissal without prejudice is a strike under the PLRA. *Day* is a Tenth Circuit per curiam opinion that offers no analysis to support its holding; it only states that "a dismissal without prejudice counts as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim." 200 F.3d at 667. *Day* relies on opinions from two other circuits as authority, *Rivera v. Allin*, 144 F.3d 719 (11th Cir. 1998); and *Patton v. Jefferson Correctional Center*, 136 F.3d 458 (5th Cir. 1998). Neither *Rivera* nor *Patton*, however, informs our decision today because neither case involved a dismissal without prejudice for failure to state a claim. The dismissals without prejudice analyzed in *Rivera* and *Patton* were dismissals for frivolousness, abuse of the judicial process, and failure to exhaust administrative remedies. The *Rivera* and *Patton* courts had no occasion to examine the implications of their holdings on the type of dismissal at issue in this case, a dismissal for failure to state a claim.

Finally, the dissent relies on a more recent case from the Ninth Circuit, *O'Neal v. Price*, 531 F.3d 1146 (9th Cir. 2008). There, a divided panel concluded that a denial of an application to proceed IFP constituted "bringing" an action for purposes of § 1915(g). The court also held that any § 1915 dismissal, however styled and regardless of whether it was rendered with leave to refile, counts as a strike. After noting that § 1915(g) "does not distinguish between dismissals with and without prejudice," the court said that it "decline[d] to read into the statute an additional requirement not enacted by Congress." 531 F.3d at 1154, 1155. Our holding today, however, does not read an additional requirement into the statute that was not already implied by Congress' use of the familiar phrase "dismissed . . . [for] fail[ure] to state a claim."[2] An unqualified dismissal for failure to state a claim is presumed to operate with prejudice; the addition of the words "with prejudice" to modify such a dismissal is simply not necessary.

D.

Our holding that a dismissal without prejudice for failure to state a claim is not a strike does not, we recognize, resolve whether a dismissal for frivolousness rendered without prejudice would count as a strike. However, nothing in our analysis of dismissals for failure to state a claim suggests that dismissals for frivolousness should be exempted from § 1915(g)'s strike designation, even when the dismissal is rendered without prejudice.

Indeed, the Supreme Court's detailed comparison in *Neitzke v. Williams*, 490 U.S. 319 (1989), of dismissals for failure to state a claim under Rule 12(b)(6) and dismissals for frivolousness under § 1915 (the IFP statute) makes clear that meaningful differences exist between these two types of dis-

---

[2]For the same reason, our holding does not, as the dissent suggests, *see* post at 27, read any words into the statute that are not already implied by well-established legal meaning. *See* part II.A, *supra*.

missal. In *Neitzke* the Court considered whether an IFP complaint that fails to state a claim under Rule 12(b)(6) is automatically frivolous within the meaning of the IFP statute. *Id.* at 320. In concluding that the two categories were distinct, the Court explained that a complaint is frivolous only "where it lacks an arguable basis either in law or in fact." *Id.* at 325. The Court also noted that the IFP statute's sua sponte dismissal provision, now 28 U.S.C. § 1915(e)(2),

> is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

*Id.* at 327. Examples of frivolous claims include those whose factual allegations are "so nutty," "delusional," or "wholly fanciful" as to be simply "unbelievable." *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002); *Denton v. Hernandez*, 504 U.S. 25, 29 (1992).

In contrast, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke*, 490 U.S at 326. "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Id.* at 326-27. Although the Supreme Court has subsequently made clear that the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-63 (2007), "[w]hat Rule 12(b)(6) does not countenance are

dismissals based on a judge's disbelief of a complaint's factual allegations," *Neitzke*, 490 U.S. at 327; *see also Twombly*, 550 U.S. at 556. "District court judges looking to dismiss claims on such grounds must look elsewhere for legal support." *Neitzke*, 490 U.S. at 327. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

*Neitzke* makes clear that a dismissal for frivolousness is of a qualitatively different character than a dismissal for failure to state a claim. As a result, our holding today should not be read to indicate that a dismissal for frivolousness that is rendered without prejudice should avoid a strike designation.

E.

Our decision today is fully consistent with Congress' dual goals of reducing prisoner litigation and, at the same time, preserving meaningful access to the courts for prisoners with potentially meritorious claims. In expressing its concerns to the contrary, the dissent, *post* at 28-30, posits a situation in which a district court is confronted with a prisoner's complaint that "wholly lack[s] merit" and dismisses the complaint without prejudice for failure to state a claim. The dismissal is appealed, and this court entertains the appeal pursuant to *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064 (4th Cir. 1993), and affirms the dismissal. The dissent contends that failure to count the district court's dismissal as a strike would undermine the goals of the PLRA. To illustrate its argument the dissent invokes *De'lonta v. Angelone*, 330 F.3d 630 (4th Cir. 2003).

*De'lonta*, however, does not substantiate the dissent's concerns. In *De'lonta* a prisoner brought a § 1983 claim alleging denial of adequate medical treatment in violation of the Eighth Amendment. Although the district court was "unable

to conceive of any set of facts under which the Eighth Amendment would entitle" the plaintiff to relief, it nevertheless dismissed the complaint without prejudice to avoid "complicating any future actions with issues of collateral estoppel or claim preclusion." 330 F.3d at 633.

*De'lonta* does not help the dissent for two reasons. First, upon review, our court actually reversed the district court's Rule 12(b)(6) dismissal and remanded the case for further proceedings. Thus, *De'lonta* is hardly an illustration of a complaint that "wholly lack[s] merit," the type of complaint that the PLRA sought to address. Second, because we reversed the district court's dismissal, we had no cause to address the appropriateness of the district court's decision to dismiss De'lonta's suit "without prejudice." To the extent, however, that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating this dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (affirming dismissal with prejudice where amendment would have been futile); *see also, e.g.*, *Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007) ("Because allowing amendment would be futile, we hold that the district court properly dismissed [plaintiff's] claims with prejudice and without leave to amend.").

Rather than compelling an overbroad interpretation of the term "dismiss" when used in the context of failure to state a claim under § 1915(g), we suggest *De'lonta* instead counsels that courts remain mindful of the distinction between an unqualified dismissal for failure to state a claim and a dismisal without prejudice. While a potentially meritorious claim, particularly by a pro se litigant, should not be unqualifiedly dismissed for failure to state a claim unless its deficiencies are truly incurable, *see Bolding v. Holshouser*, 575 F.2d

461, 464-65 (4th Cir. 1978), such an unqualified dismissal is entirely proper when the court has reviewed the claim and found it to be substantively meritless. Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation. Similarly, dismissal of such a complaint without prejudice works to defeat the PLRA's goal of reducing substantively meritless prisoner lawsuits because it allows the prisoner to file the same meritless claim again. When a district court is confronted with a complaint that fails not because of some technical deficiency but because its claims lack legal merit, this complaint is properly dismissed for failure to state claim — that is, finally and prejudicially disposed of. Rather than detracting from Congress' goal of reducing meritless prisoner litigation, today's decision will preserve the ability of district courts to meaningfully distinguish between poorly pled but potentially meritorious claims and those that simply lack merit. Any prisoner whose complaint falls in the latter category will be penalized with a strike as the PLRA intended.

F.

McLean has had six prior civil actions dismissed. Because four of those dismissals were without prejudice for failure to state a claim, he has accrued only two strikes under § 1915(g). Accordingly, the clerk's order allowing him to proceed in this appeal without full prepayment of fees will be allowed to stand. Because McLean is not a "three striker," it is not necessary for us to consider his claim that he is under imminent danger of serious physical injury.

III.

We turn at last to the merits of McLean's appeal. McLean has sued the United States and the United States Congress under 42 U.S.C. § 1983, claiming that AEDPA's statute of limitations provision, 28 U.S.C. § 2244(d), is a retroactive law

and is thus unconstitutional. As the district court correctly concluded, the United States and its Congress are immune from suit in this instance.

As a sovereign the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal quotations omitted). The United States has not waived its sovereign immunity for constitutional tort suits, such as the one here. *Martinez v. Winner*, 771 F.2d 424, 442 (10th Cir. 1985). Similarly, this sovereign immunity extends to the United States Congress when it is sued as a branch of the government. *See Keener v. Congress of U.S.*, 467 F.2d 952, 953 (5th Cir. 1972). And members of Congress "are immune from liability for their actions within the 'legislative sphere.'" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 510 (1975); *see also* Art. I, § 6, cl. 1 (Speech and Debate Clause). As a result, the courts lack jurisdiction to entertain a suit against the United States and the United States Congress that challenges the enactment of AEDPA.

## IV.

In sum, we hold that the dismissal of a prisoner's complaint without prejudice for failure to state a claim does not count as a strike under 28 U.S.C. § 1915(g). This holding means that McLean does not have three strikes under § 1915(g) and that he can proceed in this appeal without the prepayment of filing fees. In considering the substance of McLean's claim, we hold that the courts lack jurisdiction under principles of sovereign immunity to entertain his suit against the United States and its Congress. Accordingly, the district court's order dismissing his complaint is

*AFFIRMED*.

SHEDD, Circuit Judge, concurring in part and dissenting in part:

Quentin McLean, a Virginia inmate and frequent litigant, filed this civil rights case against the United States of America and the United States Congress, asserting that a provision of AEDPA is unconstitutional. The district court dismissed the complaint under 28 U.S.C. § 1915A for failure to state a claim upon which relief can be granted. As the majority's summary disposition of the merits of McLean's appeal illustrates, the district court clearly did not err in dismissing the complaint. Thus, to the extent that we reach the merits of the appeal, I agree that the district court's order should be affirmed. However, I disagree with the majority's holding that McLean is not a "three striker" under 28 U.S.C. § 1915(g). In my view, this holding, which flows from the majority's conclusion that prisoner cases that are dismissed without prejudice for failure to state a claim do not count as "strikes" under § 1915(g), is based on an incorrect reading of the statute. Consistent with the opinions of other circuit courts, I believe the most natural way to read § 1915(g) is to read it as it is written, and the statute on its face does not limit its scope only to dismissals with prejudice.

I

Ordinarily, litigants must pay $350 to file a civil complaint in a federal district court and $450 to file a notice of appeal in a federal court of appeals. *See* 28 U.S.C. §§ 1913 note ("Court of Appeals Miscellaneous Fee Schedule"), 1914(a). Notwithstanding this fact, "Congress has long regulated the access of indigent litigants to the federal judicial system," *Roller v. Gunn*, 107 F.3d 227, 230 (4th Cir. 1997), and it has authorized the district and circuit courts to waive the fees for most individuals who are unable to afford them by granting *in forma pauperis* ("IFP") status. Specifically, Congress enacted the IFP statute, now codified as 28 U.S.C. § 1915, "to ensure that indigent litigants have meaningful access to the

federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). However, "there is no absolute 'right' to IFP status," *Altizer v. Deeds*, 191 F.3d 540, 545 (4th Cir. 1999), and "Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them," *Roller*, 107 F.3d at 231.

Congress originally believed that the IFP statute would not lead to a rise in vexatious litigation, but over time "the statute's noble purpose has been threatened by a flood of meritless lawsuits." *Id.* at 230. "Unsurprisingly, prisoners proved responsible for much of this litigation." *Id.* As the Supreme Court recently noted:

> Prisoner litigation continues to "account for an outsized share of filings" in federal district courts. In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous.

*Jones v. Bock*, 549 U.S. 199, 203 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 n.4 (2006)). Although our legal system "remains committed to guaranteeing that prisoner claims . . . are fairly handled according to law," the "challenge lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit," *Jones*, 549 U.S. at 203.

"Finding that the proliferation of prisoner litigation was due significantly to the lack of economic disincentives to filing meritless cases," *Roller*, 107 F.3d at 230-31, "Congress addressed that challenge in the PLRA [Prison Litigation Reform Act]," by enacting "a variety of reforms designed to filter out the bad claims and facilitate consideration of the good," *Jones*, 549 U.S. at 203-04. Simply put, Congress decided that "[w]hat this country needs . . . is fewer and better

prisoner suits," *id.* at 203, and the PLRA's "focus is to limit litigation brought by prisoners," *Montcalm Pub. Corp. v. Commonwealth of Va.*, 199 F.3d 168, 171 (4th Cir. 1999), and "to remove the federal district courts from the business of supervising the day-to-day operation of state prisons," *Cagle v. Hutto*, 177 F.3d 253, 257 (4th Cir. 1999).

To effect its purpose, the PLRA "imposes some rather substantial limitations on a prisoner's ability to initiate a civil action," *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006), and it "contains provisions that should discourage prisoners from filing claims that are unlikely to succeed," *Crawford-El v. Britton*, 523 U.S. 574, 596 (1998). As we have noted: "Many sections of the PLRA are simply amendments to the IFP statute. . . ." *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 682 n.4 (4th Cir. 2005).

For example, "[p]rior to the enactment of the PLRA, prisoners were able to use the *in forma pauperis* statute to avoid paying filing fees." *Green*, 454 F.3d at 407. This practice "risked encouraging suits that these fees might otherwise have deterred." *Nagy v. FMC Butner*, 376 F.3d 252, 255 (4th Cir. 2004). The PLRA amended § 1915 to require prisoners to pay the full filing fee, and now "IFP status simply allows a prisoner to pay the filing fee in installments." *Altizer*, 191 F.3d at 544 (addressing § 1915(b)).[1] Rejecting a constitutional challenge to this aspect of the PLRA, we commented:

> Requiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state. Those living

[1]Even so, § 1915(b)(4) provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."

outside of prisons cannot file a lawsuit every time they suffer a real or imagined slight. Instead, they must weigh the importance of redress before resorting to the legal system. If a prisoner determines that his funds are better spent on other items rather than filing a civil rights suit, "he has demonstrated an implied evaluation of that suit" that the courts should be entitled to honor.

*Roller*, 107 F.3d at 233 (quoting *Lumbert v. Illinois Dept. of Corrections*, 827 F.2d 257, 260 (7th Cir. 1987)).

The PLRA also created § 1915(g), which is the "three strikes" provision now at issue. Section 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

We have noted that § 1915(g) "does little more than apply the same rules to prisoners that apply to everyone else who brings an action or appeal." *Altizer*, 191 F.3d at 546. In other words:

Although section 1915(g) attaches consequences to past actions, . . . [it] does not affect a prisoner's substantive rights, and it does not block his or her access to the courts. A prisoner may still pursue any claim after three qualifying dismissals, but he or she must do so without the aid of the [IFP] procedures.

*Id.* at 546 n. 11 (quoting *Adepegba v. Hammons*, 103 F.3d 383, 386 (5th Cir. 1996)).[2]

Additionally, the PLRA increases the obligation of federal courts to dismiss certain prisoner litigation. "Before the PLRA, the *in forma pauperis* provision of § 1915 [then codified at 28 U.S.C. § 1915(d)], applicable to most prisoner litigation, permitted *sua sponte* dismissal only if an action was frivolous or malicious." *Jones*, 549 U.S. at 214.[3] However, the PLRA amended § 1915(d), and recodified it as § 1915(e)(2)(B), by adding (among other things) that the courts should dismiss an IFP action that "fails to state a claim on which relief may be granted."

Similarly, the PLRA also created two additional provisions authorizing the summary dismissal of prisoner litigation regardless of whether the prisoner seeks to proceed IFP. First, the PLRA created § 1915A, which in pertinent part requires the district court "before docketing, if feasible or, in any event, as soon as practicable after docketing" to (1) screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and (2) dismiss such a complaint or any portion thereof that is "frivolous, malicious, or fails to state a claim upon which relief may be granted." Second, the PLRA created 42 U.S.C. § 1997e(c)(1),[4] which in pertinent part requires the district court "on its own motion or on the motion of a party" to dismiss any action brought with respect to prison conditions under federal law by a prisoner confined in

---

[2] Our court has a similar "three strikes" rule for prisoners seeking writs of mandamus, prohibition, or other extraordinary relief. *See* 4th Cir. R. 21(c)(2).

[3] The district courts had discretion under § 1915(d) to dismiss a frivolous or malicious action with or without prejudice. *See Denton v. Hernandez*, 504 U.S. 25, 34 (1992).

[4] Section 1997e(a) requires prisoners to exhaust administrative remedies within the prison before filing a civil action.

any jail, prison, or other correctional facility "if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted."

Each of these "separate, but interrelated" PLRA provisions, *O'Neal v. Price*, 531 F.3d 1146, 1152 (9th Cir. 2008), instructs courts to "dismiss" actions on the three grounds that constitute "strikes" under § 1915(g) (*i.e.*, frivolous, malicious, fails to state a claim). Because of their obvious similarity, courts may have the option in a particular case of dismissing IFP prisoner litigation for failure to state a claim under more than one of these provisions. *See, e.g.*, *Michau v. Charleston County, S.C.*, 434 F.3d 725 (4th Cir. 2006) (in holding that the district court erred in summarily dismissing the plaintiff's complaints for failure to state a claim under § 1915A because the IFP litigant was not a "prisoner," we nonetheless affirmed the dismissals because the district court had also relied on § 1915(e)(2)(B)). Generally speaking, a dismissal under any of these provisions, as well as under Federal Rule of Civil Procedure 12(b)(6), would qualify as a "strike" under § 1915(g).

As we have noted: "The overriding goal in policing in forma pauperis complaints is to ensure that the deferred payment mechanism of § 1915(b) does not subsidize suits that prepaid administrative costs would otherwise have deterred." *Nagy*, 376 F.3d at 257. In amending § 1915(d), and in creating §§ 1915(g), 1915A(b)(1), and 1997e(c)(1), Congress clearly viewed dismissal for failure to state a claim as an important part of its efforts to curb the number of meritless prisoner lawsuits. *Cf. Green*, 454 F.3d at 408 ("Before the PLRA was enacted, no exhaustion requirement applied to § 1983 actions. By imposing an exhaustion requirement on actions by prisoners challenging the conditions of their confinement, Congress clearly viewed exhaustion as an important

part of its efforts to curb the number of frivolous lawsuits brought by prisoners." (citations omitted)).**⁵**

## II

The specific issue that we have raised in this appeal *sua sponte* is whether a dismissal without prejudice for failure to state a claim counts as a strike under § 1915(g).**⁶** This is a matter of statutory construction. *See Green*, 454 F.3d at 408. Using common sense as a guide, *Kofa v. I.N.S.*, 60 F.3d 1084, 1088 (4th Cir. 1995) (en banc), "[o]ur first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). We determine the "plainness or ambiguity of statutory language . . . by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," *id.* at 341, and "we ordinarily resist reading words . . . into a statute that do not appear on its face," *Dean v. United States*, ___ U.S. ___, 2009 Westlaw 1138892, *3 (Apr. 29, 2009) (internal quotation marks omitted). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson*, 519 U.S. at 340 (internal quotation marks omitted).

---

**⁵**Congress was undoubtedly aware of the Supreme Court's decision in *Neitzke*, in which the Court held that a complaint was not necessarily frivolous under § 1915(d) because it failed to state a claim. The *Neitzke* Court observed that despite the apparent appeal under § 1915(d) of using failure to state a claim "as a broadbrush means of pruning meritless complaints from the federal docket, as a matter of statutory construction it is untenable." 490 U.S. at 326.

**⁶**The operative word in § 1915(g) is "dismissed," Throughout this opinion, I refer to the word "dismissed" in various forms (*e.g.*, "dismiss" and "dismissal"). Substantively for purposes of this issue, there is no difference in the form of the word.

A.

We have not previously addressed this issue in a published opinion, but other circuit courts have held that dismissals without prejudice count as strikes under § 1915(g). *See, e.g.*, *O'Neal*, 531 F.3d at 1154 ("Because § 1915(g) of the current PLRA does not distinguish between dismissals with and without prejudice, [prior § 1915(d) precedent] does not detract from the conclusion that a dismissal without prejudice may count as a strike."); *Day v. Maynard*, 200 F.3d 665 (10th Cir. 1999) (stating that "a dismissal without prejudice counts as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim."). We have held similarly, albeit in non-precedential unpublished opinions. *See Vaughan v. Watts*, 305 Fed. Appx. 958, 958-59 (4th Cir. 2009) (noting that the district court's § 1915A dismissal without prejudice for failure to state a claim constituted the prisoner's third strike under § 1915(g)); *Ballenger v. Norton*, 238 Fed. Appx. 974, 975 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 1476 (2008) (affirming the district court's § 1915A order that both dismissed without prejudice the complaint for failure to state a claim and deemed the case a strike under § 1915(g)).

In *Green*, we did consider and address the issue of whether a "routine dismissal" under § 1997e(a) for failure to exhaust administrative remedies constitutes a strike for purposes of § 1915(g). We held that such a dismissal does not constitute a strike, reasoning that "[b]ecause a dismissal for failure to exhaust is not listed in § 1915(g), it would be improper for us to read it into the statute." 454 F.3d at 409.

In *Nagy*, although we did not consider what constitutes a strike under § 1915(g), we did address the meaning of the unqualified word "dismiss" as it is used in § 1915(e)(2)(B)(i), pursuant to which the district court had dismissed a prisoner's IFP complaint as frivolous. On appeal, the prisoner argued that the district court erred by considering the amount sought by the prisoner in determining whether the claim was frivo-

lous. We rejected the prisoner's argument and affirmed the dismissal. Notably, we stated that we did not think "that Congress intended a dismissal under § 1915(e)(2)(B)(i) of the in forma pauperis statute to operate as a dismissal with prejudice." 376 F.3d at 258. Therefore, we held that the prisoner "remain[ed] free to file a *paid* complaint with these same allegations." *Id.* (emphasis added).

B.

Section 1915(g) plainly does not distinguish between dismissals with and without prejudice. Rather, it mandates that absent imminent danger, a prisoner may not file, or appeal a judgment in, a civil action under the IFP statute "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted. . . ." Notwithstanding § 1915(g)'s silence regarding "prejudice," the majority reads it as unambiguously limiting the unqualified word "dismissed" when coupled with the phrase "fails to state claim upon which relief may be granted" to mean "dismissed with prejudice."[7]

The majority grounds this reading on its view that "the complete phrase has a well-established legal meaning" that Congress presumably incorporated into § 1915(g). *Majority Op.*, at 7. For support, the majority notes that the "failure to state a claim" ground in § 1915(g) is patterned after Federal Rule of Civil Procedure 12(b)(6) and unless otherwise speci-

---

[7]In analyzing this issue, the majority has limited its interpretation of the word "dismissed" to address only a dismissal for failure to state a claim for relief. For purposes of my opinion, I will utilize the majority's analytical framework. Accordingly, it is not necessary to attempt to reconcile our holding in *Nagy* that a dismissal for frivolousness under § 1915(e)(2)(B)(i) must be without prejudice. However, even if the analysis would require reading the word "dismissed" in a broader context, *Nagy* does not preclude my analysis.

fied, courts presume that a Rule 12(b)(6) dismissal for failure to state a claim is "both a judgment on the merits and . . . rendered with prejudice." *Majority Op.*, at 7. From this, the majority observes that "[i]t follows that the type of prior dismissal for failure to state a claim contemplated by § 1915(g) is one that constituted an adjudication on the merits and prejudiced the filing of a subsequent complaint with the same allegations." *Majority Op.*, at 7. Because a Rule 12(b)(6) dismissal without prejudice is not an adjudication on the merits, the majority concludes that it does not fall within § 1915(g) and, consequently, does not count as a strike.

In general usage, there is unquestionably a distinction between dismissals with and without prejudice, but the issue before us is whether the plain language of § 1915(g) makes the distinction relevant. A dismissal with prejudice "is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." *Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 534 (4th Cir. 1991) (citation and punctuation omitted). Conversely, a dismissal without prejudice "operates to leave the parties as if no action had been brought at all." *Dove v. CODESCO*, 569 F.2d 807, 809 n.3 (4th Cir. 1978). Despite this distinction, which really pertains only to "claim preclusion and issue preclusion, . . . collectively referred to as 'res judicata,'" *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008), both types of dismissal share one important characteristic: the termination of the specific action (or claim), *see, e.g.*, *United States v. California*, 507 U.S. 746, 756 (1993) ("A dismissal without prejudice terminates the action and concludes the rights of the parties in that particular action.") (citation and punctuation omitted). Moreover, a district court ordinarily has discretion to decide whether to dismiss an action, including for failure to state a claim, with or without prejudice. *Carter v. Norfolk Comm. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985); *see also Payne v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006).

Thus, dismissals with and without prejudice for failure to state a claim for relief are two distinct types of "dismissals,"

but they operate to achieve the same result for purposes of a specific civil case. Congress undoubtedly was aware of this fact when it used the unqualified word "dismissed" in § 1915(g). *See Keene Corp. v. United States*, 508 U.S. 200, 212 (1993) (noting that "we apply the presumption that Congress was aware of these earlier judicial interpretations and, in effect, adopted them"). Based on the plain language of § 1915(g), which draws no distinction between the two well-established types of dismissals for failure to state a claim for relief, the most natural way to read the unqualified word "dismissed" is that it encompasses both types. Although the majority reads the word "dismissed" as actually stating "dismissed with prejudice," we simply are not at liberty to add those limiting words to the statute. *See, e.g.*, *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951) ("[O]ur problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain — neither to add nor to subtract, neither to delete nor to distort."); *United States v. Coombs*, 37 U.S. 72, 80 (1838) (noting that "upon general principles of interpretation, where the words are general, the Court [is] not at liberty to insert limitations not called for by the sense, or the objects, or the mischiefs of the enactment"). As the Ninth Circuit stated in *O'Neal*: "If Congress had intended to limit strikes to dismissals with prejudice, it could have said so." 531 F.3d at 1154 n.9; *see also Jama v. Immigration and Customs Enforc.*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.").

The majority is correct that courts ordinarily construe unqualified orders of dismissal for failure to state a claim for relief as being with prejudice. Federal Rule of Civil Procedure 41(b), which "sets forth . . . a default rule for determining the import of [an involuntary] dismissal," *Semtek Int'l. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001), mandates such a construction. However, there is no indication that Con-

gress intended that principle of construction to apply beyond the specific context of the rule itself, and certainly not to § 1915(g). Indeed, it is notable that although Rule 12 (upon which the majority relies) is actually silent on the question of prejudice, Rule 41 expressly differentiates between dismissals with and without prejudice. Congress does not enact the Federal Rules of Civil Procedure, but it does participate in the rulemaking process. *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 552 (1991). To the extent that Congress was involved in the creation of Rule 41, it expressly recognized the difference between dismissals with and without prejudice, and this fact makes clear that when Congress intends to distinguish between the types of dismissals, it does so expressly. Congress plainly did not do so in enacting § 1915(g).[8]

C.

Although the plain language of § 1915(g) resolves this case, I note as a practical matter that district courts often dismiss prisoner cases — including those that wholly lack merit — for failure to state a claim without prejudice simply to avoid burdening the prisoner with potential res judicata implications that a dismissal with prejudice may cause. *See, e.g.*, *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (noting that the district court found that it was unable to conceive of any set of facts that would entitle the plaintiff to relief, but it nonetheless dismissed the complaint without prejudice under § 1915(e)(2)(B) to avoid "complicating any future actions with issues of collateral estoppel or claim preclusion"). Under the majority's view, those types of cases do not count as strikes under § 1915(g) for the simple reason that the district court exercised its discretion in a manner to benefit

---

[8]For the reasons set forth in this opinion, particularly Part I, I believe it is evident that the legislative purpose underlying § 1915(g) clearly does not support the majority's decision.

the prisoner by eliminating a subsequent res judicata challenge.

This can lead to a particularly curious result given our rules concerning appellate jurisdiction and dismissals without prejudice. Although an order dismissing a complaint without prejudice is generally not final and appealable, such an order is final and appealable if the grounds for dismissal clearly indicate that the plaintiff could not amend the complaint to cure the defects that warranted the dismissal. *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993). We must "examine the appealability of a dismissal without prejudice based on the specific facts of the case in order to guard against piecemeal litigation and repetitive appeals." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 345 (4th Cir. 2005); *see also GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 176 (4th Cir. 2007).

In *De'Lonta*, we applied the *Domino Sugar* rules to permit an appeal from an order dismissing a prisoner's complaint without prejudice under § 1915(e)(2)(B) for failure to state a claim upon which relief could be granted. As noted, the district court found the prisoner's complaint to wholly lack merit, but dismissed the case without prejudice to avoid burdening the prisoner with res judicata implications. Under the majority's view, despite the fact that a prisoner in the situation presented in *De'Lonta* may unsuccessfully litigate an appeal of a patently baseless lawsuit all the way to the Supreme Court, that dismissal would not count as a strike based on the mere fortuity that the district court labeled the dismissal "without prejudice." The fact that this scenario did not occur in *De'Lonta* (because we reversed the dismissal) is of no moment. The majority's categorical exclusion of dismissals without prejudice for failure to state a claim compels the result that a dismissal in the scenario I have described cannot count as a strike if the dismissal is ultimately affirmed.

Although I disagree with the majority on this matter, I do not forecast that its decision will necessarily cause a prolifera-

tion of meritless prisoner litigation. As I have noted, our judicial system already faces that problem. I do believe that the majority's decision will not advance Congress' clear goal to reduce prisoner litigation, at least so long as district courts continue to err on the side of caution and dismiss meritless complaints without prejudice. However, the majority's opinion may well prompt district judges who want to curb excessive (and often meaningless and time-consuming) prisoner litigation to discontinue that practice and, instead, start dismissing those complaints with prejudice.

## III

The majority states that counting dismissals without prejudice for failure to state a claim as strikes would "impose indiscriminate restrictions" on prisoners' access to the federal courts, *Majority Op.*, at 8, but there is nothing at all indiscriminate in this regard. First, by enacting § 1915(g), Congress has restricted a prisoner's access to the federal court system *only* if the prisoner seeks IFP status, and *only* if federal courts have previously dismissed three or more prior actions for the bases specified in that section, and *only* if the prisoner is not under imminent danger of serious physical injury. Even with this restriction, a prisoner is not barred from federal courts; instead, he simply must bear the ordinary costs of litigation like all other non-IFP litigants. Second, although the majority concludes that Congress did not intend for dismissals for failure to state a claim to count as strikes under § 1915(g), no one would realistically contend that Congress lacks the power to count those dismissals as strikes.

Although McLean appears to have had six actions dismissed for failure to state a claim while he has been incarcerated in Virginia, that description of his litigation history does not present the entire story. As with any prolific litigant, attempting to catalog McLean's litigation history from court records is not a simple task, but a quick review of the available records shows that he is the type of prisoner-litigant that

Congress had in mind when it enacted the PLRA.[9] For example, this case arises from the Eastern District of Virginia, where McLean has unsuccessfully pursued several actions. However, McLean has actually been much more litigious in the Western District of Virginia, which has designated him as a "three striker" under § 1915(g).[10] In addition to McLean's dismissals for failure to state a claim noted by the majority, most if not all of which probably could have been designated "with prejudice," his designation as a three-striker appears to have led to the summary dismissal without prejudice of numerous other cases in the Western District. McLean has also had cases dismissed without prejudice in the Western District under § 1997e for failure to exhaust administrative remedies, and he has unsuccessfully pursued multiple appeals in this Court and in the Supreme Court.

The majority and I agree that the district court's dismissal order for failure to state a claim in the appeal now before us should be affirmed. That order does not specify that it is without prejudice; thus, it will count as a strike even under the majority's view. Given that the majority agrees that McLean has at least two previous strikes, McLean should hereafter be deemed a three-striker regardless of whether the majority's holding regarding § 1915(g) is correct or not.

## IV

Based on the foregoing, I concur in Part III of the majority opinion, and I dissent from the remainder.

---

[9]McLean appears to have litigated in Virginia under the name "Quentin McLean" and "Quentin McLean-El." Additionally, a Westlaw search indicates that a "Quentin McLean" and a "Quentin McLean-El" also litigated unsuccessfully in the District of Columbia federal courts in the 1990s.

[10]McLean has appealed one order designating him as a three-striker, and we have placed that appeal in abeyance pending this appeal. *See McLean v. Dr. Smith*, C.A. No. 7:07cv584 (W.D.Va. Dec. 17, 2007) (No. 08-6180 4th Cir.).