**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MONTCALM PUBLISHING CORPORATION,
Plaintiff-Appellant,

and

DONALD ARLIS HODGES; MICHAEL
GLYNN FLORA,
Plaintiffs,

v.

COMMONWEALTH OF VIRGINIA; RONALD
ANGELONE, in his official capacity as
Director of the Department of
Corrections of the Commonwealth
of Virginia; R. J. BECK; J. HORTON;
R. A. YOUNG; E. C. MORRIS; MS.

SUMMERS; JOHN DOE, 1 - 7, in their
official capacities such fictitious
names being designed to identify
those VDOC employees whose true
identities are now unknown to
plaintiff-intervenor, but who serve
as (a) members of the VDOC
Publication Review Committee, (2)
Warden or Superintendent of Keen
Mountain Correctional Center
(KMCC), and (3) functional KMCC
mailroom censor; J. Phippin; MR.
BECK,
Defendants-Appellees.

No. 99-6308

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-92-696-R, CA-92-907-R)

Argued: October 27, 1999

Decided: December 3, 1999

Before WIDENER and MOTZ, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Widener and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Keith S. Orenstein, ORENSTEIN & ORENSTEIN, P.C.,
New York, New York, for Appellant. Mark Ralph Davis, Senior
Assistant Attorney General, Criminal Division, OFFICE OF THE
ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON
BRIEF:** Mark L. Earley, Attorney General, Criminal Division,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellees.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal presents questions as to whether, and to what extent,
the limits on attorney's fees in the Prison Litigation Reform Act gov-
ern fees sought by a non-prisoner who intervenes in a case originally
brought by a prisoner. We agree with the district court that the Act's
fee caps do apply to the fees requested by the intervenor here. The
district court, however, imposed these caps on all legal work per-
formed throughout the course of litigation, both before and after the
effective date of the Act. Because the Supreme Court's recent deci-
sion in <u>Martin v. Hadix</u>, 119 S. Ct. 1998 (1999), restricts the Act's
reach to fees for services performed after its effective date, we must
reverse and remand for further proceedings.

2

I.

In 1992, two inmates at Keen Mountain Correctional Center, Donald Hodges and Michael Flora, initiated this civil rights action by filing separate pro se complaints. They alleged that prison officials had violated their First Amendment rights by preventing them from receiving Gallery magazine because of its graphic, sexually explicit, and at least arguably obscene material. The district court denied the corrections officials' motion for summary judgment and referred the cases to a magistrate judge, who consolidated the two cases.

A year after the first pro se complaint was filed and prior to any evidentiary hearing, Montcalm Publishing Corporation, the publisher of Gallery, moved to intervene in the consolidated action. The magistrate judge granted that motion. Montcalm, too, challenged the correctional officials' refusal to distribute Gallery to the inmates. Montcalm alleged that Virginia Department of Corrections Division Operating Procedure 852 (DOP 852), which permits official interception of obscene publications, violated its First Amendment and due process rights. Specifically, Montcalm asserted that DOP 852 infringed on its rights: "(a) to be free from prior governmental restraints on the publication of Gallery magazine, (b) to be free from the outright suppression of its publication of Gallery magazine, (c) to be free from the arbitrary, capricious and invidious suppression of its publication of Gallery magazine, and (d) to adequate notice and a reasonable opportunity to be heard before its publication of Gallery magazine is restrained or suppressed by the government." Montcalm's Complaint ¶ 19.

The district court upheld the constitutionality of DOP 852 in all respects. See Hodges v. Virginia, 871 F. Supp. 873 (W.D. Va. 1994). Montcalm alone appealed to this court. On appeal, Montcalm argued only that DOP 852 violated its due process right to receive notice and an opportunity to be heard before its publications were disapproved for receipt by prisoners. We agreed with Montcalm on this issue and reversed. See Montcalm Publ'g Corp. v. Beck, 80 F.3d 105, 106 (4th Cir.), cert. denied, 519 U.S. 928 (1996). After the prison officials unsuccessfully petitioned for rehearing and for certiorari to the Supreme Court, the district court issued a memorandum opinion and order consistent with our mandate.

3

Montcalm then moved for an award of attorney's fees under 42 U.S.C. § 1988(b) (Supp. II 1996). That statute empowers a court to award reasonable attorney's fees to prevailing parties in federal civil rights actions. The district court found that Montcalm constituted a prevailing party entitled to reasonable attorney's fees under § 1988, but that all such fees were limited by the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(d) (Supp. II 1996). The PLRA provides that in certain cases "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established . . . for payment of court-appointed counsel." § 1997e(d)(3). The district court applied the PLRA's rate limits to all of Montcalm's requested fees for legal services provided over the entire course of the litigation. After determining that the number of hours for which Montcalm sought recovery was excessive, the district court granted Montcalm a reduced award.

Montcalm appeals, asserting that the district court improperly applied the PLRA to its attorney's fees award and erroneously reduced its compensable hours.

II.

Montcalm's first and principal argument is that the PLRA "does not operate as a limitation on the attorney's fees that may be recovered by a nonprisoner." Brief of Appellant at 10.

Montcalm notes the myriad provisions in the PLRA narrowing judicial relief available to prisoners, establishing new requirements for prisoners seeking such relief, and imposing penalties on prisoners bringing frivolous lawsuits. See Alexander S. v. Boyd, 113 F.3d 1373, 1379-80 n.6 (4th Cir. 1997) (summarizing various provisions of PLRA), cert. denied, 118 S. Ct. 880 (1998). Montcalm also relies on portions of the legislative history of the PLRA in which various legislators stated the view that the Act "contains several measures to reduce frivolous inmate litigation." See, e.g., 141 Cong. Rec. S14,317 (daily ed. Sept. 26, 1995) (statement of Sen. Abraham). The structure of the statute and its legislative history, Montcalm contends, "demonstrate[ ] that Congress intended the restrictions on the recovery of attorney's fees to be applicable solely to prisoners and their lawyers

4

bringing lawsuits challenging the conditions of the prisoners' imprisonment." Brief of Appellant at 20.

Although the PLRA's structure and history are also consistent with a legislative desire to curb judicial involvement in the "daily operation of federal and state correctional facilities," Alexander S., 113 F.3d at 1379, certainly the statute's focus is to limit litigation brought by prisoners. Thus, Montcalm's argument that the statute applies "solely to prisoners" is not unreasonable. It is, however, an argument at odds with the plain language of the statute.

The PLRA expressly imposes limitations on the amount of attorney's fees awarded "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(d)(1). Thus, Congress has mandated that statutory fee limits apply not "solely to prisoners" but to "any action brought by a prisoner." Unquestionably, the case at hand is one"brought by a prisoner." Indeed, two prisoners, Hodges and Flora, initiated this case; Montcalm merely intervened. Thus, application of the PLRA is inescapable.

Although this holding may seem harsh, it is dictated by Montcalm's decision not to bring an independent action but to intervene in the prisoners' action. Montcalm must now live with the consequences of that decision. Moreover, our holding accords with the general rule that "the intervenor is treated as if he were an original party." 7C Charles Alan Wright et al., Federal Practice and Procedure § 1920 (2d ed. 1986); see also 1 Mary F. Derfner & Arthur D. Wolf, Court Awarded Attorney's Fees ¶ 7.03 (1998) (explaining that intervenors are "generally eligible for an award of fees just as though they were an original party to the litigation").*

_____

*We recognize that a court, in its discretion, may regard intervention as a separate action when the intervenor has an independent basis for jurisdiction. See Atkins v. State Bd. of Educ. , 418 F.2d 874, 876 (4th Cir. 1969); accord Harris v. Illinois-California Express, Inc., 687 F.2d 1361, 1367 (10th Cir. 1982); Fuller v. Volk, 351 F.2d 323, 328 (3d Cir. 1965). Montcalm, however, has not asserted that a federal court would have an independent basis for jurisdiction over its claim in the absence of a prisoner complaint; nor has Montcalm asked either the district court or this court to exercise any discretion to treat its intervention as a separate action. Accordingly, we have no occasion to consider such arguments.

5

III.

Much of the legal work in this case--that done at the trial level on the merits and on direct appeal--was performed prior to the effective date of the PLRA, April 26, 1996. In accordance with then-controlling circuit precedent, see Alexander S. , 113 F.3d at 1388, the district court applied the PLRA caps to all of the fees requested by Montcalm.

After the district court ruled on Montcalm's petition for attorney's fees, however, the Supreme Court issued Martin v. Hadix, 119 S. Ct. 1998 (1999). The Court there held that the PLRA"limits attorney's fees with respect to postjudgment monitoring services performed after the PLRA's effective date but it does not so limit fees for postjudg-ment monitoring performed before the effective date." Id. at 2001 (emphasis added).

Neither party has briefed the significance of Hadix here. At oral argument counsel for the corrections officials, while acknowledging the rule enunciated in Hadix, suggested that it may not apply in the case at hand because in Hadix the prevailing parties' entitlement to reasonable fees was recognized in an order that substantially ante-dated the effective date of the PLRA. Thus, the reliance interest of the prevailing parties and their attorneys in Hadix  was stronger than that in the present case, in which no pre-existing order acknowledged that reasonable attorney's fees would be awarded for satisfactory services rendered.

This argument is not without force. We recognize the factual dif-ferences between this case and Hadix. The reliance interest of Mont-calm's attorneys is certainly less firmly based, resting as it does entirely on the existence of a federal statute--42 U.S.C. § 1988--which permits a court to award reasonable fees to parties who prevail in establishing a violation of federal law. However, although the Supreme Court carefully set forth the facts of the case in its opinion in Hadix, it seems to us that the holding in Hadix cannot fairly be read to be confined to those facts.

Both at the beginning and at the end of its opinion in Hadix, the Court stated its holding in general terms without emphasis on the pre-

6

existing fee award order. Thus, at the outset of the opinion, the Court summarized its holding:

> We conclude that § 803(d)(3)[42 U.S.C.§ 1997e(d)(3)] limits attorney's fees with respect to postjudgment monitoring services performed after the PLRA's effective date but it does not so limit fees for postjudgment monitoring performed before the effective date.

Hadix, 119 S. Ct. at 2001. Similarly, the Court concluded its opinion explaining:

> [T]he PLRA contains no express command about its temporal scope. Because we find that the PLRA, if applied to postjudgment monitoring services performed before the effective date of the Act, would have a retroactive effect inconsistent with our assumption that statutes are prospective, in the absence of an express command by Congress to apply the Act retroactively, we decline to do so.

Id. at 2008 (citation omitted).

In view of this general language, we believe that Hadix must be read to hold that the PLRA's limit on attorney's fees does not apply to legal services performed prior to the Act's effective date. This conclusion accords with our recent interpretation of Hadix, see Altizer v. Deeds, 191 F.3d 540, 544 (4th Cir. 1999) (summarizing Hadix as holding that "the PLRA's limitation on attorneys' fees may not be applied to services performed prior to the PLRA's enactment"), and that of other courts. See, e.g., Chatin v. Coombe, 186 F.3d 82, 90 (2d Cir. 1999) (noting that "[i]n Hadix, the Supreme Court ruled that, in a case filed prior to the effective date of the PLRA, § 803(d)(3) applied to legal work performed after the effective date, but not to legal work performed before it"); Ilick v. Miller, ___ F. Supp. 2d ___, 1999 WL 781654 (D. Nev. Sept. 28, 1999) (ruling that"prior section 1988 law applies to all fees billed up to the effective date of the PLRA (i.e., April 26, 1996), and that the PLRA fee cap applies to all fees billed after that date").

7

Accordingly, we remand this case to the district court so that it may award attorney's fees in light of Hadix. We note that the district court indicated in its opinion the hourly rates it would have applied if it had concluded that the PLRA did not govern. The court based those rates on uncontroverted affidavits from local attorneys attesting to the reasonableness of such rates in that community. Montcalm contends, however, that it should receive reimbursement at the standard rates of its New York counsel.

"[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994); see also National Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988). If a matter is so complex or specialized that "no attorney, with the required skills, is available locally," a court may, of course, award fees for counsel located elsewhere. Id. In the case at hand, however, the district judge, who was intimately familiar with this litigation, concluded that this case was "straightforward and uncomplicated" and could have been competently performed by available local counsel. Our careful review of the record reveals no abuse of discretion in this assessment.

IV.

Finally, Montcalm argues that the district court improperly reduced the number of compensable hours for which fees would be awarded.

The district court awarded Montcalm fees for only 76.15 of the 511.6 hours it claimed for work at the trial level. The court reached this calculation first by eliminating 180 hours for discovery and 27 hours for an evidentiary hearing. (The court also deducted the related expenses claimed for each.) The district court found, and Montcalm does not dispute, that the procedural due process claim on which Montcalm prevailed involved "no factual issues;" thus, neither the discovery nor the hearing were relevant to Montcalm's single successful claim. Accordingly, elimination of the fees and expenses devoted to discovery and the evidentiary hearing seems entirely justified.

The district court awarded only 25% of the remaining 304.6 hours requested for the trial phase. "[B]ecause Montcalm failed to properly

8

document its billing records," the court had to estimate how much time the attorneys spent on the successful procedural due process claim as opposed to the three other constitutional claims Montcalm asserted. The court explained that on the basis of its experience with "this litigation and the documents filed in the case," it believed that "Montcalm's attorneys devoted the bulk of their efforts to the First Amendment issues." But in order to "give Montcalm the benefit of the doubt" it "assume[d] that its attorneys devoted their efforts equally between [sic] the four alleged violations."

Montcalm maintains that all issues in the case were interrelated and, therefore, the district court should award fees "without any reduction in time to account for the lack of success proper on the First Amendment cause of action." Brief of Appellant at 26. We find, however, that although Montcalm's four claims are all related to the suppression of Gallery magazine by Virginia corrections officials, they were not inseparable. Montcalm's core claim was that DOP 852 constituted an unconstitutional prior restraint or "outright" governmental suppression of speech; its fall-back position was that DOP 852 constituted an unconstitutionally arbitrary, capricious, and invidious suppression of speech; and its ultimate fall-back position was that DOP 852 was unconstitutional because it suppressed speech without notice or an opportunity to be heard. The only contention on which Montcalm prevailed--the "ultimate fall-back," solely procedural contention --is markedly different and less complex than those on which it did not prevail.

We recognize that "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" is inappropriate. See Hensley v. Eckerhart, 461 U.S. 424, 435 n.11 (1983). Attorneys may devote significantly different amounts of time to issues of varying complexity. Moreover, "[w]here a plaintiff has obtained excellent results, . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. at 435. However, a careful review of the record in this case reveals no abuse of the district court's discretion in reducing the award for fees incurred at the trial level.

Finally, Montcalm asked for an award of 344.5 hours for the appellate phase of the litigation. This phase included the appeal to this

9

court, the response to the petition for certiorari to the Supreme Court, the litigation on remand, and the attorney's fees petition. Montcalm litigated only the procedural due process issue throughout this phase of the litigation. The district court nonetheless held that the request for fees in the appellate phase was also "excessive." The court explained that Montcalm appealed a novel but uncomplicated issue, noting that Montcalm itself described the procedural due process claim as a "very simple issue" in its opposition to the petition for certiorari in the Supreme Court. The district court also noted that Montcalm had briefed and researched this issue during the lower court phase. Explaining that it "ha[d] difficulty believing" the publisher needed "the equivalent of one attorney working over eight forty-hour weeks" for the appellate phase, the court reduced by 25% the hours for the appellate phase.

Once again, it appears to us that the district court in no way abused its discretion in arriving at this conclusion. We do note that at one point in its opinion the district court indicated that it would allow Montcalm 172.3 hours for the appellate phase and in another that it would allow 256.875 hours. Neither of these figures equals precisely 75% of 344.5; we trust the district court will clarify the calculations on remand.

V.

For the foregoing reasons, we affirm the district court's conclusion that the PLRA attorney's fees limits apply to the fees requested by Montcalm in this action. We remand, however, so that the court may properly apply such limits only to those fees incurred after the effective date of the PLRA.

REVERSED AND REMANDED

10