# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2020 Term**

_____

No. 18-0595

_____

FILED
March 27, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**PETER LUNSFORD, FRANKLIN KELLY, AND LLOYD ERWIN,**
**Defendants Below, Petitioners,**

**V.**

**CHRISTOPHER SHY,**
**Plaintiff Below, Respondent.**

_____

**Appeal from the Circuit Court of Cabell County**
**The Honorable Gregory L. Howard, Jr., Judge**
**Civil Action Nos. 16-C-156 & 17-C-155**

**AFFIRMED**

_____

**Submitted: January 29, 2020**
**Filed: March 27, 2020**

John P. Fuller
Jordan K. Herrick
Michael W. Taylor
Bailey & Wyant, PLLC
Charleston, West Virginia
Attorneys for the Petitioners

Kerry A. Nessel
The Nessel Law Firm
Huntington, West Virginia
Attorney for the Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE HUTCHISON concurs in part and dissents in part and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.     "The appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*."  Syllabus point 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

2.     "When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented.  Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below.  Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party."  Syllabus point 2, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

3.     "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed."  Syllabus point 1, *Wickland v. American Travellers Life Insurance Company*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

4.      "Syllabus Point 3 of *Wells v. Smith*, 171 W. Va. 97, 297 S.E.2d 872 (1982), allowing a jury to return punitive damages without finding compensatory damages is overruled. Punitive damages must bear a reasonable relationship to the potential of harm caused by the defendant's actions."  Syllabus point 1, *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), *modified on other grounds by Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010).

5.      A jury may award punitive damages subsequent to finding liability for a 42 U.S.C. § 1983 claim without an accompanying award of nominal or compensatory damages.  To the extent that this holding is inconsistent with Syllabus point 1 of *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), *modified on other grounds by Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010), that case is expressly modified.

**Jenkins, Justice:**

Petitioners Peter Lunsford ("Mr. Lunsford"), Franklin Kelly ("Mr. Kelly"), and Lloyd Erwin ("Mr. Erwin") (collectively "the Correctional Officers") herein appeal from the June 1, 2018 order of the Circuit Court of Cabell County denying the Correctional Officers' Rule 50(b) motion for judgment as a matter of law, Rule 59(a) motion for a new trial, and Rule 59(e) motion to alter or amend judgment as provided for by the West Virginia Rules of Civil Procedure. In this appeal, the Correctional Officers raise two assignments of error. First, the Correctional Officers claim that the circuit court erred in allowing punitive damages to be recovered by Respondent Christopher Shy ("Mr. Shy") without an accompanying award of compensatory or nominal damages. The Correctional Officers next assert that the circuit court erred in its failure to apply the provisions of the Prison Litigation Reform Act, 42 U.S.C. § 1997e (2012 & Supp. V 2017) ("PLRA"),[1] to Mr. Lunsford and Mr. Kelly. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find no error. Accordingly, we affirm the circuit court's June 1, 2008 order.

---

[1] We note that in *Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 813 (E.D. Mich. 2006), 42 U.S.C. § 1997e was found to be unconstitutional as applied on grounds that are not relevant to the present matter.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Shy asserted the following in his Complaint. In August of 2015,[2] Mr. Shy was incarcerated at the Western Regional Jail ("WRJ") in Barboursville, West Virginia. Mr. Shy alleged that, during his time of incarceration, the Correctional Officers used excessive force against him in violation of his Fourteenth Amendment rights under the United States Constitution. Specifically, Mr. Shy alleged that, in August of 2015, the Correctional Officers began threatening him. The threats allegedly escalated to physical assaults. On a day in August of 2015, at approximately 7:30 to 8:30 a.m., Mr. Shy "was in a visitation room at [the] WRJ when [the Correctional Officers] entered the visitation room, shackled [Mr. Shy] and beat [him] about the face, neck[,] and other body parts." Further, Mr. Shy "was choked by at least one of the individual [Correctional Officers]." Mr. Shy attempted to seek medical treatment at the WRJ medical department, but claims he was denied any treatment.

Mr. Shy contends that, as a result of his beating, he received "several permanent physical injuries" including a "bruised throat with a hand print from one of the [Correctional Officers], back and rib pain[], two black eyes, a swollen/sprained wrist which

---

[2] There appears to be some discrepancy as to when the date of the incident actually occurred. Specifically, in the underlying complaint, the date of the incident between the parties is identified as August 24, 2015. However, in the briefs submitted to this Court, both parties allege the incident occurred on August 23, 2015. The precise date of the incident is not relevant to the issues raised herein on appeal.

persisted for no less than three (3) to four (4) weeks, and a bruised and knotted head which likely resulted in a concussion." Mr. Shy further alleges that, to date, he continues to suffer from severe headaches and dizziness, and his vision has "worsened significantly."

Moreover, according to Mr. Shy, he claims that he "filed various grievances," related to claims of use of excessive force by the Correctional Officers in this matter, and "received no response to the same." Related to the August of 2015 incident, Mr. Shy contends that he mailed a copy of his "statement" of charges against the Correctional Officers to the West Virginia Regional Jail and Correctional Facility Authority ("WVRJA") office in Charleston and that an investigation thereafter commenced. During the investigation, the Correctional Officers denied any wrongdoing. The final outcome of the investigation is unclear from the record before us.

On February 29, 2016, Mr. Shy filed a lawsuit, Civil Action Number 16-C-156 ("initial complaint"), against the Correctional Officers and the WVRJA.[3] It is undisputed that Mr. Shy was still an inmate at the WRJ at the time he filed his initial complaint. In his initial complaint, Mr. Shy alleged, among a myriad of claims, a violation of his Fourteenth Amendment rights under the United States Constitution pursuant to 42

---

[3] The WVRJA is not a party to this appeal and has made no filings with this Court in this matter.

U.S.C. § 1983 (2012) (also referred to as "section 1983").[4] On December 8, 2016,[5] the circuit court dismissed Mr. Lunsford and Mr. Kelly from Civil Action Number 16-C-156 because Mr. Shy had been unable to obtain service of process upon them.[6] However, Mr. Shy was able to obtain service of process against Mr. Erwin, and the matter proceeded against him.

Subsequently, on March 8, 2017, Mr. Shy filed a second complaint against the same parties and containing allegations identical to his initial complaint. The second complaint was assigned Civil Action Number 17-C-155 ("second complaint"). It is

---

[4] 42 U.S.C. § 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[5] The Honorable Judge Jane Hustead presided over this matter until January 3, 2017.

[6] Mr. Shy alleges, in part, that he was unable to serve Mr. Lunsford and Mr. Kelly because they were both terminated by the WRJ when Mr. Shy's initial complaint was filed. Mr. Erwin, still then an employee of the WRJ, was served with a copy of the initial complaint at the WRJ.

undisputed that at the time the second complaint was filed, Mr. Shy was no longer an inmate confined in a traditional correctional facility. Service of process of the second complaint was obtained upon Mr. Lunsford and Mr. Kelly. On July 19, 2017, upon the agreement of all parties, Civil Action Number 17-C-155 and Civil Action Number 16-C-156 were consolidated for the purposes of discovery and trial. In its order related to the consolidation, the circuit court ordered,

> the consolidated action shall proceed under the Complaint filed in Civil Action Number 16-C-156, that all pleadings filed after the date of entry of this Order shall be filed in Civil Action No. 16-C-156, and that all discovery conducted to date in Civil Action No. 17-C-155 is incorporated as part of the record in Civil Action No. 16-C-156.

The jury trial of Mr. Shy's underlying claims began on December 5, 2017. The trial lasted for three days. Prior to closing arguments, the parties submitted to the circuit court the jury instructions that were ultimately read by the circuit court to the jury and a verdict form for the jury. At the close of evidence, the Correctional Officers moved for judgment as a matter of law; however, the circuit court denied the Correctional Officers' motion. The jury began their deliberations on December 8, 2017, and returned a verdict that same day.

The jury found, by a preponderance of the evidence, that each of the Correctional Officers used excessive force on Mr. Shy on August 23, 2015, in violation of his Fourteenth Amendment rights under the United States Constitution and that each of the

5

Correctional Officers committed the civil tort of battery on Mr. Shy on August 23, 2015. The jury further found by a preponderance of the evidence that the conduct of each of the Correctional Officers "occurred during the scope of the [Correctional Officers'] employment with the West Virginia Regional Jail and Correctional Facility Authority." The jury did not find liability on any of Mr. Shy's remaining claims of civil assault, intentional infliction of emotional distress, or conspiracy. Furthermore, while the jury determined that Mr. Shy suffered damages as a proximate result of the Correctional Officers' conduct, they awarded $0.00 in damages for past and present anxiety, humiliation, annoyance and inconvenience, pain and suffering, mental anguish, and loss of ability to enjoy life. However, the jury determined that punitive damages were appropriate and awarded Mr. Shy punitive damages totaling $4,500.00, payable by the Correctional Officers in the amount of $1,500.00 each.

Prior to dismissal of the jury, Mr. Shy requested that the jury be ordered to return to deliberation to award nominal damages. The Correctional Officers objected to Mr. Shy's request. According to the circuit court, prior to the submission of the case to the jury, no party requested a jury instruction that would require the jury to award nominal damages as a prerequisite to awarding punitive damages. The circuit court further noted that, "[s]imilarly, no party requested that the verdict form include a direction that punitive damages may not be awarded absent some nominal or compensatory damages." The circuit court denied the request, and the jury was dismissed.

6

On December 18, 2017, the Correctional Officers filed a Rule 50(b) motion for judgment as a matter of law as provided for in the West Virginia Rules of Civil Procedure. In their Rule 50(b) motion, the Correctional Officers argued that West Virginia law requires that punitive damages must bear a reasonable relationship to the potential harm caused by a defendant's actions. The Correctional Officers further argued that, in this matter, "there [was] no reasonable relationship between the compensatory damages ($0.00) and the punitive damages award ($4,500.00)." Accordingly, they requested that the punitive damages be set aside. On February 28, 2018, Mr. Shy filed his response, and on March 5, 2018, the Correctional Officers replied.

The circuit court held a hearing on the Correctional Officers' motion on March 21, 2018. At the conclusion of the hearing, the circuit court took the motions under advisement and directed the parties to submit proposed orders to the circuit court. The circuit court, on March 26, 2018, entered the judgment order memorializing the jury's verdict. Following entry of the judgment order, the Correctional Officers filed motions pursuant to West Virginia Rules of Civil Procedure 59(a) and (e) for a new trial and/or to alter or amend the judgment order on the same basis as their previous Rule 50(b) motion.

On June 1, 2018, the circuit court entered an order denying the Correctional Officers' motions under Rules 50(b), 59(a), and 59(e). The circuit court analyzed similar out-of-jurisdiction cases involving claims arising under section 1983 and concluded that

in [s]ection 1983 actions, where the jury finds that a plaintiff has been subjected to excessive force in violation of his or her constitutional rights and where the plaintiff has put on evidence that he or she suffered compensable injury, an award of punitive damages shall not be set aside on the ground that the jury did not also award compensatory damages or nominal damages.

Furthermore, "[t]he jury's verdict, which does not include an award of compensatory damages, indicates that the jury determined [Mr. Shy's] constitutional rights had been violated, but that [Mr. Shy] had the good fortune to escape the ordeal without serious injury." Accordingly, the circuit court found that "[t]he lack of a compensable injury does not preclude [Mr. Shy] from recovering punitive damages."

Moreover, the circuit court addressed the application of the PLRA[7] to preclude Mr. Shy's recovery of punitive damages. The circuit court "determine[d] that under the clear language of [s]ection 1997e(h) of the PLRA,[8] the claims against Defendants Lunsford and Kelly do not fall under the PLRA." (Footnote added). The circuit court further "observe[d] that prior to the submission of this case to the jury, [the Correctional

---

[7] The PLRA is codified at 42 U.S.C. § 1997e (2012 & Supp. V 2017). The PLRA places certain limitations on actions brought by a prisoner. *See generally id.*

[8] Section 1997e(h) defines the term "prisoner" under the PLRA: "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (2012). The parties do not dispute that Mr. Shy was incarcerated at the WRJ at the time of the events giving rise to his litigation and when he filed his initial complaint, but that he had been released from that facility by the time that he filed his second complaint.

Officers] did not assert during litigation that [s]ection 1997e(e)[9] could be applicable to any of [Mr. Shy's] claims." (Footnote added). The circuit court noted that the Correctional Officers failed to offer or request a jury instruction on this issue and made no objection to the instructions read to the jury.

Additionally, even though the circuit court determined that section 1997e(h) of the PLRA applied to Mr. Shy's claims against Mr. Erwin, the circuit court declined to set aside the punitive damage award against Mr. Erwin, citing section 1997e(e) of the PLRA. Relying on out-of-jurisdiction cases, the circuit court found that because the jury determined the Correctional Officers violated Mr. Shy's constitutional rights, recovery of punitive damages against the Correctional Officers was not precluded by the PLRA. It is from the circuit court's June 1, 2018 order that the Correctional Officers now appeal.

## II.

## STANDARD OF REVIEW

Our consideration of the instant proceeding is guided by many principles. First, the Correctional Officers filed a motion under West Virginia Rule of Civil Procedure 50(b) for judgment as a matter of law. This Court has held that "[t]he appellate standard

---

[9] Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)." 42 U.S.C. § 1997e(e) (Supp. V 2017).

of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998] is *de novo*." Syl. pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009). Furthermore,

> [w]hen this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party.

Syl. pt. 2, *Fredeking*, 224 W. Va. 1, 680 S.E.2d 16.

Next, the Correctional Officers filed a motion under West Virginia Rule of Civil Procedure Rule 59(a) and (e) for a new trial and/or to alter or amend the judgment order. This Court has stated that,

> [a]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W. Va. 119, 454 S.E.2d 413 (1994) (*Asbestos Litigation*). Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

10

*Tennant v. Marion Health Care Found., Inc.*, 194 W. Va. 97, 104, 459 S.E.2d 374, 381 (1995). Moreover, we have noted that "a trial judge should *rarely* grant a new trial. . . . Indeed, a new trial should not be granted unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *McInarnay v. Hall*, 241 W. Va. 93, 98, 818 S.E.2d 919, 924 (2018) (internal quotations and citation omitted). Additionally, this Court has held that

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

In the case *sub judice*, the Correctional Officers raise two assignments of error. Thus, we first address the Correctional Officers' contention that the circuit court erred in allowing punitive damages to be recovered without an accompanying award of compensatory or nominal damages. We then will address the Correctional Officers' assertion that the circuit court erred in its failure to apply the provisions of the PLRA to Mr. Lunsford and Mr. Kelly.

11

### A. Award of Punitive Damages without an Accompanying Award of Compensatory or Nominal Damages

The Correctional Officers first contend that the circuit court erred in allowing punitive damages to be recovered without an accompanying award of compensatory or nominal damages. Specifically, the Correctional Officers argue that the circuit court "incorrectly ruled that under federal common law, an award of punitive damages may stand absent an award of compensatory damages." The Correctional Officers further contend that the circuit court erred in reaching this conclusion because it "relie[d] exclusively on case law from outside of the United States Court[] of Appeals for the Fourth Circuit and ignores the case law of the Fourth Circuit." The Correctional Officers assert that this is improper and creates disharmony between West Virginia state courts and federal courts sitting in West Virginia.[10]

Mr. Shy responds that the circuit court properly allowed the recovery of punitive damages without an accompanying award of nominal or compensatory damages. According to Mr. Shy, the majority of federal courts have held that it is allowable for a jury to award punitive damages without a corresponding award of nominal or compensatory damages in section 1983 matters. We agree with Mr. Shy.

---

[10] We note that the Correctional Officers do not allege on appeal that the punitive damages award was in and of itself excessive or that there was an insufficient showing that punitive damages should be awarded in this matter.

At the outset, we observe that this Court's law regarding recovering punitive damages without a corresponding award of compensatory damages is generally well-settled. Specifically, in Syllabus point 1 of *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), *modified on other grounds* by *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010), this Court held: "Syllabus Point 3 of *Wells v. Smith*, 171 W. Va. 97, 297 S.E.2d 872 (1982), allowing a jury to return punitive damages without finding compensatory damages is overruled. *Punitive damages must bear a reasonable relationship to the potential of harm caused by the defendant's actions*." (Emphasis added). Accordingly, it is the general rule in West Virginia that one cannot recover punitive damages when compensatory damages have not been awarded.

However, in this matter, the jury below found liability against all three defendants on two claims: a state law battery claim and a federal section 1983 claim. Furthermore, this Court has previously stated that "federal law is controlling when public officials are sued in state court for violations of federal rights under 42 U.S.C. § 1983." *Robinson v. Pack*, 223 W. Va. 828, 834, 679 S.E.2d 660, 666 (2009); *accord Brumfield v. Workman*, No. 18-0109, 2019 WL 1380128, at *4 (W. Va. Mar. 26, 2019) (memorandum decision). While not the exact issue before us in this matter, in *Workman*, this Court looked to federal law on the issue as to whether a jury should have been instructed as to punitive damages in a section 1983 case. *Id.* at 7.

Furthermore, one of the leading federal cases on damages in a section 1983 case is *Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965). In *Basista*, the court stated that

> [t]he Civil Rights Acts were brought into being at a critical time in the history of the United States following the Civil War. They were intended to confer equality in civil rights before the law in all respects for all persons embraced within their provisions. *We believe that the benefits of the Acts were intended to be uniform throughout the United States, that the protection to the individual to be afforded by them was not intended by Congress to differ from state to state, and that the amount of damages to be recovered by the injured individual was not to vary because of the law of the state in which the federal court suit was brought. Federal common law must be applied to effect uniformity, otherwise the Civil Rights Acts would fail to effect the purposes and ends which Congress intended.*

*Id.*, 340 F.2d at 86 (emphasis added). The *Basista* court further stated that

> we cannot conclude that the federal common law may be applied in respect to compensatory or even nominal damages while state law, here the law of Pennsylvania, would be applicable on the issue of exemplary or punitive damages. To so hold would be to create a legal hybrid of an incredible and unworkable kind.

*Id.*, 340 F.2d at 87.[11] Given that the case *sub judice* involves a section 1983 claim, we will examine federal law on the narrow issue of whether an individual can recover punitive

---

[11] The *Basista* court noted that

> [i]f state law is followed, it appears that within the Third Circuit a plaintiff bringing an action under the Civil Rights Act, 42 U.S.C.A. § 1983, could recover exemplary damages in New Jersey on the presumption that nominal damages were merged with the award of punitive damages, *Barber v. Hohl*, supra 40 N.J.Super. at 789, 123 A.2d 785, but not in Pennsylvania, *Hilbert v. Roth*, supra. Such an inequitable result would allow a New Jersey resident to be compensated for a denial of his

14

damages in the absence of an award of nominal or compensatory damages on a section 1983 claim.

Turning now to the federal law discussing the recovery of punitive damages without corresponding compensatory damages in a section 1983 case, we first examine *Basista*. In *Basista*, the plaintiff-appellant, Mr. Basista, brought a section 1983 action against police officers alleging that the officers violated his right to be "undisturbed in his home" and "his right not to be subjected to an unreasonable and illegal arrest" pursuant to the Fourteenth Amendment. *Basista*, 340 F.2d at 77, 80. Following a jury trial, the jury returned a verdict in favor of Mr. Basista, awarding $0.00 in compensatory damages and $1,500.00 in punitive damages against one of the defendants. *Id.* at 77. The trial judge set aside the jury verdict and granted the defendant's motion for a directed verdict. *Id.* Mr. Basista then appealed. *Id.*

The *Basista* court examined several issues, one being whether an individual can recover punitive damages without a corresponding award of nominal or compensatory damages in a section 1983 matter. *See generally Basista*, 340 F.2d 74. The defendant sought to apply the state law of Pennsylvania "that there can be no exemplary or punitive

> civil rights, but not a Pennsylvania resident. This result would be required in a diversity action, but should not be allowed where the jurisdiction of the court is statutory and exclusive.

*Basista v. Weir*, 340 F.2d 74, 87 n.11 (3d Cir. 1965).

15

damage where actual damage is not shown." *Id.* at 85. The court held that "[a]s a matter of federal common law it is not necessary to allege nominal damages[,] and nominal damages are proved by proof of depriviation [sic] of a right to which the plaintiff was entitled." *Id.*, 340 F.2d at 87. Accordingly, the court found that Mr. Basista would have been entitled to sustain the judgment if not for other errors in the trial. *Id.* at 88.

The United States Court of Appeals for the First Circuit has also examined this issue. In *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196 (1st Cir. 2009), De Jesus Nazario "brought an action pursuant to 42 U.S.C. §§ 1983 and 1988, as well as under Puerto Rico Law, alleging that police officers . . . violated [her deceased son's] constitutional right to be free from excessive force." 554 F.3d at 198. Subsequent to a jury trial, the jury "returned a verdict in favor of the decedent's estate under § 1983 and Puerto Rico law." *Id.* However, "the jury awarded no actual or nominal damages on the § 1983 claim, yet found [one defendant] liable for $25,000 in punitive damages and [the other defendant] liable for $15,000 in punitive damages." *Id.* In this matter, the plaintiff did not move the court "for additur of nominal damages [nor did] the defendants [] move to set aside the punitive damages award on the ground that such damages may be awarded only when there are actual or nominal damages." *Id.* Furthermore, "[n]either party appealed, and the punitive damages judgment became final." *Id.* The issue before the court on appeal was which party had prevailed for the purpose of awarding attorney's fees. *Id.* Thus, while this case is procedurally distinguishable from the case *sub judice*, we nevertheless find it persuasive.

16

On appeal, the *De Jesus Nazario* court stated that it had previously noted that

> "[w]hile it is true that in a typical state law tort case punitive damages unaccompanied by either compensatory or nominal damages cannot stand, . . . *a section 1983 case premised on a constitutional violation evokes a different set of considerations.* Several respected courts have ruled persuasively that, as a matter of federal law, a punitive damage award which responds to a finding of a constitutional breach may endure even though unaccompanied by an award of compensatory damages." [*Campos-Orrego v. Rivera*,] 175 F.3d at 97.

*De Jesus Nazario*, 554 F.3d at 204 (emphasis added). The court furthered observed that

> [t]he other circuits that have considered this issue unanimously follow the rule announced in *Basista*. *See, e.g.*, *Robinson v. Cattaraugus County*, 147 F.3d 153, 161 (2d Cir. 1998); *King v. Macri*, 993 F.2d 294, 297-98 (2d Cir. 1993); *ACORN Fair Hous.*, 211 F.3d at 302 (citing *Ryland v. Shapiro*, 708 F.2d 967, 976 (5th Cir. 1983); *Wilson v. Taylor*, 658 F.2d 1021, 1033 (5th Cir. Unit B. Oct. 1981); *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980)); *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989); *Salitros v. Chrysler Corp.*, 306 F.3d 562, 574 (8th Cir. 2002) (citing *Goodwin v. Cir. Ct. of St. Louis County*, 729 F.2d 541, 548 (8th Cir. 1984); *Risdal v. Halford*, 209 F.3d 1071, 1072 (8th Cir. 2000)); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir. 1973); *Searles v. Van Bebber*, 251 F.3d 869, 880-81 (10th Cir. 2001); *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991) (citing *Wilson v. Taylor*, 658 F.2d at 1033).

*De Jesus Nazario*, 554 F.3d at 205 (footnote omitted). Moreover, the court held that

> [w]ith this weight of authority permitting the imposition of punitive damages even in the absence of compensatory or nominal damages, the policy of maintaining uniformity in the federal common law militates in favor of at least limiting the *Kerr-Selgas* rule.[12] *See, e.g.*, *Bhd. of Locomotive Eng'rs v.*

---

[12] In *Kerr-Selgas v. American Airlines, Inc.*, 69 F.3d 1205, 1214-15 (1st Cir. 1995), the United States Court of Appeals for the First Circuit held "that in a suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, a punitive damages

*Springfield Terminal Ry. Co.*, 210 F.3d 18, 26 (1st Cir. 2000) ("If the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision.") (citation omitted); *La. ACORN*, 211 F.3d at 301 ("When applying civil rights statutes, federal common law must be applied to effect uniformity 'otherwise the Civil Rights Acts would fail to effect the purposes and ends which Congress intended.'" (quoting *Basista*, 340 F.2d at 86)).

In this circuit several district courts have declined to extend the *Kerr-Selgas* rule to § 1983 claims. In *Acevedo–Luis v. Zayas*, citing *Campos-Orrego*, the district court allowed a punitive damages award of $5,000 to stand despite the jury's failure to award actual or nominal damages. 419 F.Supp.2d 115, 126 (D.P.R. 2006) *aff'd sub nom. Acevedo-Luis v. Pagan*, 478 F.3d 35 (1st Cir. 2007) (quoting *Campos-Orrego*, 175 F.3d 89, 97). Moreover, after canvassing case law in this circuit and others, another district court noted that "in a section 1983 action, a jury may properly award punitive damages even if it awards no compensatory damages." *Rivera-Oquendo v. Soto-Santiago*, 552 F. Supp. 2d 229, 233 (D.P.R. 2008).

---

award is sustainable only if it is accompanied by an award of actual or nominal damages." *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 199 (1st Cir. 2009).

*De Jesus Nazario*, 554 F.3d at 205 (footnote added and omitted).[13]  Other federal courts have held similarly.[14]  Moreover, the courts of other states have also reached the same conclusion regarding the federal law concerning damages.[15]

---

[13] "These holdings affirming punitive damages absent an award of compensatory damages are necessitated by the fact that compensatory damages in constitutional torts, though maliciously inflicted, are sometimes difficult to prove. *Carlson v. Green,* 446 U.S. 14, 22 n. 9 (1980)." *Rowley v. 25 India Point St. Corp.*, No. C.A. PC00-1810, 2004 WL 253566, at \*9 (R.I. Super. Jan. 30, 2004).

[14] *See King v. Macri*, 993 F.2d 294, 297 (2d Cir. 1993) (internal citations omitted) ("Though case law is divided on whether punitive damages may be awarded in the absence of a compensatory award, we have indicated that such an award may be made in section 1983 cases, as have most courts of appeals[.]"); *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991) (alteration in original) ("The jury assessed punitive damages of $1,750 each against Locke and Gemelli. No award for compensatory damages was made to Davis for physical or psychological injuries.  In this circuit, 'punitive damages may be awarded in a § 1983 action even without actual loss. . . .' *Wilson v. Taylor*, 658 F.2d 1021, 1033 (5th Cir. Unit B Oct. 1981); *see Glover v. Alabama Dept. of Corrections*, 734 F.2d 691, 694 (11th Cir. 1984), *cert. granted and vacated*, 474 U.S. 806, 106 S. Ct. 40, 88 L.Ed.2d 33 (1985), *on remand*, 776 F.2d 964 (11th Cir. 1985) (affirming punitive damages award of $25,000 after jury awarded $1 in nominal damages on section 1983 claim)."); *Davis v. Mason Cty.*, 927 F.2d 1473, 1485-86 (9th Cir. 1991), *cert. denied*, 502 U.S. 899, 112 S. Ct. 275, 116 L.Ed.2d 227 (1991), *superseded by statute on other grounds as recognized in Davis v. City & Cty. of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) ("Rodius received $25,000 in punitive damages and $0 in compensatory damages. The deputies' argument that the jury erred in awarding punitive damages while not awarding compensatory damages fails. The Supreme Court has held that punitive damages may be available under Section 1983 where there has been a violation of constitutional rights even though the victim is unable to show compensable injury. *Smith v. Wade*, 461 U.S. at 55 n. 21, 103 S. Ct. at 1639 n. 21."); *Erwin v. Cty. of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989) ("The question remains whether punitive damages can be awarded when the jury has awarded no compensatory or at least nominal damages to a particular plaintiff. Punitive damages (as awarded here) are applicable even in the absence of actual damages, *Sahagian v. Dickey*, 827 F.2d 90, 100 (7th Cir. 1987); *McKinley v. Trattles*, 732 F.2d 1320, 1326 (7th Cir. 1984), despite local law to the contrary. *Wilson v. Taylor,* 658 F.2d 1021, 1033 (5th Cir. 1981). Although state law may not allow punitive damages without a compensatory award, under federal law, when a jury finds a constitutional violation under a § 1983 claim, it may award punitive damages even when it does not award compensatory damages. The scope of punitive damages in § 1983 actions is governed by the 'federal common law of damages' which imposes uniformity when enforcing the Civil Rights Acts. *Lenard v. Argento,* 699 F.2d 874, 897 (7th Cir. 1983)[, *abrogated on other grounds by Hensley v. Eckerhart*, 461 U.S. 424, 436 n. 11 (1983)]; *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir.

The Correctional Officers do not assert that the circuit court should have applied the general rule in West Virginia that one cannot be awarded punitive damages without a corresponding award of compensatory damages. Instead, the Correctional Officers argue that the United States Court of Appeals for the Fourth Circuit and federal district court cases within the Fourth Circuit have ruled differently than the majority of the federal courts on this issue and that, for consistency purposes, we should follow the Fourth Circuit and the federal district court cases within the Fourth Circuit. However, we are not persuaded by this argument or the cases cited to by the Correctional Officers.

First, the Correctional Officers heavily rely on the United States Court of Appeals for the Fourth Circuit case, *People Helpers Foundation, Inc. v. City of Richmond, Virginia*, 12 F.3d 1321, 1326 (4th Cir. 1993). While this case finds that one cannot recover punitive damages without corresponding compensatory damages, it does not involve a

---

1965).”); *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980) (“Punitive damages may also be awarded in a § 1983 action even without actual loss, despite local law to the contrary. *See, e. g.*, *Silver v. Cormier*, 529 F.2d 161, 163 (10th Cir. 1976); *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir. 1974); *Stolberg v. Board of Trustees*, 474 F.2d 485, 489 (2d Cir. 1973); *Mansell v. Saunders*, 372 F.2d 573, 576 (5th Cir. 1967).”).

[15] *See, e.g.*, *Gordon v. Gerhardt*, No. 6796, 1981 WL 2710, at *5-6 (Ohio Ct. App. Mar. 5, 1981) (“Where an action for damages is based on the Federal Civil Rights Act, 42 U.S.C., Sec. 1983, whether that action is brought in a state court or in a federal court, federal law with regard to the right to recover punitive damages applies. . . . If federal common law was not applied in the state court as to civil rights complaints, litigants in a state like Ohio would be forced into the federal court system. The trial court in the case before us therefore did not err in awarding punitive damages, even though no compensatory damages were allowed, and defendants’ first assignment of error is overruled.”).

section 1983 claim. *Id.* at 1326-27. Thus, we are not persuaded by the reasoning of the Fourth Circuit under our particular set of facts. The Correctional Officers have not cited any other Fourth Circuit case involving a section 1983 claim, and we have not been able to find one.

Second, the Correctional Officers also rely on two district court cases within the Fourth Circuit.[16] One of the cases is from the Western District of Virginia. In *Givens v. O'Quinn*, 447 F. Supp. 2d 593, 595 (W.D. Va. 2006), this particular damages issue was not addressed in the body of the opinion, but rather in a footnote. Specifically, footnote 5 simply provides that

> [t]he defendants argue that compensatory damages are a prerequisite to punitive damages. Indeed, although § 1983 is silent on the question, '[i]n the absence of a specific statutory directive on this issue, federal courts have chosen to apply the majority rule that punitive damages are not recoverable when compensatory damages have not been awarded.' *People Helpers Found. v. City of Richmond*, 12 F.3d 1321, 1327 (4th Cir. 1993). *But see Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989) (holding that 'when a jury finds a constitutional violation under a § 1983 claim, it may award punitive damages even when it does not award compensatory damages').

*Givens*, 447 F. Supp. 2d at 602 n.5.

---

[16] It does not appear that either of the two district court cases were appealed to the Fourth Circuit.

The second case is from the District Court of South Carolina. In *Cowick v. Glen Campbell Detention Center*, No. 517CV03001JFAKDW, 2018 WL 794466, at *1 (D.S.C. Jan. 3, 2018), *report and recommendation adopted*, No. CV 5:17-3001-JFA, 2018 WL 783649 (D.S.C. Feb. 7, 2018), the court cited the *People Helpers* case and briefly, and simply, concluded that the plaintiff in the matter failed "to state a plausible claim for punitive damages against either Defendant because he seeks only punitive damages and does not include a request for compensatory or nominal damages." *Id.* at *2.

We are not persuaded by the *People Helpers* case or the two federal district court cases cited to by the Correctional Officers.[17] Instead, we find more compelling the overwhelming majority of federal case law that allows punitive damages to be recovered in the absence of corresponding compensatory damages under the narrow circumstances in a section 1983 claim. Accordingly, we now hold that a jury may award punitive damages subsequent to finding liability for a 42 U.S.C. § 1983 claim without an accompanying award of nominal or compensatory damages. To the extent that this holding is inconsistent with Syllabus point 1 of *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), *modified on other grounds by Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010), that case is expressly modified. Applying this holding to the matter *sub judice*, we find that the circuit court did not err in allowing the jury to award

---

[17] Furthermore, the Correctional Officers have not cited to any authority that mandates this Court look only to the Court of Appeals for the Fourth Circuit and the federal district courts within the Fourth Circuit to guide our decision in this matter.

punitive damages to Mr. Shy without a corresponding award of nominal or compensatory damages.[18]   Accordingly, we affirm the circuit court's entry of judgment in favor of Mr. Shy.

## B.  Prison Reform Litigation Act

Next, the Correctional Officers assert that the circuit court erred in failing to apply the provisions of the PLRA to Mr. Lunsford and Mr. Kelly.[19]   The Correctional Officers recognize that at the time of filing the initial complaint, Mr. Shy was a prisoner pursuant to the PLRA and that at the time of filing of the second complaint, Mr. Shy was no longer a prisoner pursuant to the PLRA.  However, the Correctional Officers argue that Mr. Shy's status at the time of filing of the second complaint is "of no consequence because the matter was consolidated with the civil action wherein [Mr.] Shy was a 'prisoner' as defined by the PLRA."  Additionally, the Correctional Officers contend that "public policy dictates that [Mr. Lunsford and Mr. Kelly] should be entitled to the limitations imposed by the PLRA" because Mr. Lunsford and Mr. Kelly were originally parties to the initial

---

[18] To the extent that the jury found liability against the Correctional Officers on both a state tort law claim and a federal section 1983 claim, the parties have not made any arguments regarding the state law claim in this appeal, only the section 1983 claim. Accordingly, we only address the issue of whether punitive damages are recoverable in the absence of an award of nominal or compensatory damages in the context of a section 1983 claim.

[19] From the record before us, we note that at no point prior to the jury trial did the Correctional Officers ever raise the issue of the applicability of the PLRA to all Correctional Officer defendants.

complaint but "due to the failure of [Mr.] Shy to timely serve these individuals they do not receive the benefit of [the] PLRA." Last, the Correctional Officers assert that the circuit court's "ruling creates a fractured application of the PLRA" in this matter as it applies differently to the various defendants herein.

Mr. Shy responds that the circuit court did not err in failing to apply the PLRA provisions to Mr. Lunsford and Mr. Kelly. Mr. Shy explains that he is not to blame for the failure to serve Mr. Lunsford and Mr. Kelly the initial complaint because he was incarcerated at the time, and both Mr. Lunsford and Mr. Kelly "had left the employ of the Western Regional Jail when the original complaint was filed as they were terminated." Furthermore, Mr. Shy asserts that it is undisputed that he was not a prisoner pursuant to the PRLA at the time of filing the second complaint and that the law is clear that the relevant factor is the status of the plaintiff at the time of the filing of the complaint. According to Mr. Shy, he chose to consolidate the two civil complaints "[o]ut of judicial economy" and claims that "[t]here is nothing in the record or any evidence [the Correctional Officers] can allude to which denotes the Agreed Order consolidating the two (2) civil matter[s] . . . was a dismissal of the 17-C-155 matter." We agree with Mr. Shy that the circuit court did not err in failing to apply the PLRA to Mr. Lunsford and Mr. Kelly.

Section 1997e(e) of the PLRA explicitly provides that "[n]o Federal civil action may *be brought by a prisoner* confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of

24

physical injury or the commission of a sexual act (as defined in section 2246 of title 18)."

42 U.S.C. § 1997e(e) (Supp. V 2017) (emphasis added). Additionally, pursuant to Section

1997e(h) of the PLRA, the term prisoner is defined as: "*any person incarcerated or*

*detained in any facility* who is accused of, convicted of, sentenced for, or adjudicated

delinquent for, violations of criminal law or the terms and conditions of parole, probation,

pretrial release, or diversionary program." 42 U.S.C. § 1997e(h) (2012) (emphasis added).

As the circuit court noted below, it is undisputed that at the time the second complaint was

filed against Mr. Lunsford and Mr. Kelly, Mr. Shy was not a prisoner pursuant to the

definition thereof provided by the PLRA. *See Cofield v. Bowser*, 247 F. App'x 413, 414

(4th Cir. 2007) ("A former inmate who has been released is no longer 'incarcerated or

detained' for the purposes of § 1997e(h) and therefore does not qualify as a 'prisoner'

subject to the PLRA.").


Moreover, the clear language of § 1997e(h) demonstrates that the claims

against Mr. Lunsford and Mr. Kelly do not fall under the provisions of the PLRA. In

*Cofield*, the United States Court of Appeals for the Fourth Circuit stated that

> it is the *plaintiff's status at the time he filed the lawsuit* that is
> determinative as to whether the § 1997e(a) exhaustion
> requirement applies. *See Norton v. City of Marietta*, 432 F.3d
> 1145, 1150 (10th Cir. 2005) (collecting cases concluding that
> plaintiff who brings action regarding prison conditions after his
> release does not have to satisfy PLRA's exhaustion
> requirement).

*Cofield*, 247 F. App'x at 414 (emphasis added). While the *Cofield* case concerned the

exhaustion requirement, it is still relevant because it states that the plaintiff's status at the

time of filing is determinative.  Moreover, in the United States Court of Appeals for the Eleventh Circuit, the court stated that

> [i]t is confinement status at the time the lawsuit is "brought," i.e., filed, that matters. The same rule of decision has been applied by the other circuits that have had occasion to speak to the issue.  *See Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) ("Appellees acknowledge that Greig was a parolee *at the time he filed his complaint . . . .*") (emphasis added); *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998) ("*When he filed this complaint*, Doe was neither incarcerated nor detained in any jail, prison, or correctional facility.") (emphasis added).

*Harris v. Garner*, 216 F.3d 970, 975 (11th Cir. 2000).  Accordingly, it is clear that the relevant factor is the plaintiff's status at the time of filing.  As previously stated, it is undisputed that at the time of filing the second complaint, Mr. Shy was not a prisoner pursuant to the definition under the PLRA.  It is also important to note that the complaints were filed as two separate complaints; the agreed order consolidating does not dismiss the second complaint; and both the parties and the circuit court continued to note both civil action numbers on all filings after the consolidation.

The only authority relied upon by the Correctional Officers to support their position that the PLRA applies to Mr. Lunsford and Mr. Kelly is *Montcalm Publishing Corporation v. Commonwealth of Virginia*, 199 F.3d 168 (4th Cir. 1999).  We are not persuaded by this authority and find it to be readily distinguishable.  In *Montcalm*, two inmates brought civil rights actions "by filing separate *pro se* complaints." *Montcalm*, 199 F.3d at 170.  The complaints "alleged that prison officials had violated their First

Amendment rights by preventing them from receiving *Gallery* magazine because of its graphic, sexually explicit, and at least arguably obscene material." *Id.* The two actions were ultimately consolidated. *Id.* A year following the filing of the first complaint, "Montcalm Publishing Corporation, the publisher of *Gallery*, moved to intervene in the consolidated action." *Id.* The issue decided by the *Montcalm* court was whether the PLRA operates "as a limitation on the attorney's fees that may be recovered by a non[-]prisoner." *Id.* at 171. The *Montcalm* court noted that a focus of the PLRA "is to limit litigation brought by prisoners. Thus, Montcalm's argument that the statute applies 'solely to prisoners' is not unreasonable. It is, however, an argument at odds with the plain language of the statute." *Id.* The court further noted that the plain language of the PLRA

> imposes limitations on the amount of attorney's fees awarded "[i]n any action brought by a prisoner who is confined to any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(d)(1). Thus, Congress has mandated that statutory fee limits apply not "solely to prisoners" but to "any action brought by a prisoner."

*Id.* at 171-72 (alteration in original).

*Montcalm* and its reasoning is simply not relevant to the case *sub judice*. In *Montcalm*, the issue was whether the PLRA applied to a non-prisoner intervener in a matter that had been initiated by two prisoners, but which had been consolidated into one, singular case. In the present matter, there were always two separate actions. There is no dispute that while the civil actions may have been consolidated for discovery and trial purposes, there still remained two separate civil actions: one that was filed while Mr. Shy was

27

incarcerated and a second that was filed after his release. Accordingly, applying the plain language of the PLRA to the instant appeal, it is clear that the PLRA simply does not apply to Mr. Lunsford and Mr. Kelly. Both Mr. Lunsford and Mr. Kelly were dismissed from the initial complaint, and, at the time Mr. Shy filed the second complaint against them, he was no longer a prisoner so as to trigger the application of the PLRA. Consequently, we find that the circuit court did not err in failing to apply the provisions of the PLRA to Mr. Lunsford and Mr. Kelly, and we affirm the circuit court's ruling in this regard.

## IV.

## CONCLUSION

For the reasons explained above, we affirm the June 1, 2018 order of the Circuit Court of Cabell County denying the Correctional Officers' motions under West Virginia Rules of Civil Procedure 50(b) for judgment as a matter of law; 59(a) for a new trial; and 59(e) to alter or amend judgment.

Affirmed.